UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GUY ZINSELMEIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:20 CV 255 CDP |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Guy Zinselmeier brings this action under 42 U.S.C. §§ 405 and 1383

seeking judicial review of the Commissioner's final decision denying his claims for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  For the reasons that follow, I will reverse the

decision and remand for further proceedings.

### **Procedural History**

On January 20, 2017, the Social Security Administration denied Zinselmeier's

September 21, 2016 applications for DIB and SSI, in which he claimed he became

disabled at 53 years of age on December 30, 2015, because of right-hand tremors,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

short-term memory loss, high blood pressure, anxiety, and panic attacks.  A hearing was held before an administrative law judge (ALJ) on August 1, 2018, at which Zinselmeier testified.  A vocational expert (VE) was available at the hearing but did not testify.  Upon being advised by the ALJ at the hearing that he would "grid out" with a restriction to light work if his onset of disability was at age 55, Zinselmeier amended his alleged onset date to February 28, 2017, which was the day before his 55th birthday.  He acknowledged and agreed that, in so doing, he waived any claim to benefits before that date.  Thirty days after the hearing, the ALJ propounded written interrogatories to the VE, and Zinselmeier's counsel did not object to the VE's answers being admitted into the record.  Counsel neither commented on the answers nor propounded any interrogatories of his own to the VE.

On March 13, 2019, the ALJ denied Zinselmeier's claims for benefits, finding that Zinselmeier had the residual functional capacity (RFC) to perform medium work, and that the VE's interrogatory answers supported a finding that Zinselmeier could perform medium and light work that exists in significant numbers in the national economy.  On January 10, 2020, the Appeals Council denied Zinselmeier's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, Zinselmeier claims that the ALJ's statements at the administrative hearing caused him to believe that he would be

awarded benefits as of his 55th birthday, which is why he amended his alleged onset

date and did not challenge the VE's interrogatory answers or file a post-hearing

brief.  Zinselmeier argues that the ALJ's adverse decision is thus based on an

underdeveloped record.  Zinselmeier also contends that the ALJ's RFC

determination that he can perform medium work despite the tremors with his right

hand and arm is not supported by substantial evidence on the record as a whole.  He

asks that I reverse the ALJ's decision and award benefits or, alternatively, remand

the matter to the Commissioner for additional proceedings before a different ALJ.

I will reverse the Commissioner's decision and remand for further

proceedings, including further development of the record.  I will deny Zinselmeier's

request that I order the case reassigned to a different ALJ.

### Medical Records and Other Evidence Before the ALJ

Zinselmeier filed his applications for disability benefits and supplemental

security income in September 2016 claiming that he became disabled in December

2015 at 53 years of age, primarily because of progressive and debilitating tremors

affecting his dominant right hand and arm.  Zinselmeier had had tremors for several

years, but the condition worsened over time – to the extent that he could no longer

write, handle tools, or perform his work as a service technician.  The tremors are

undetectable when Zinselmeier's right arm is at rest; but during purposeful,

voluntary movement of the right hand to perform a task – such as reaching or

grasping – the tremors increase in intensity, making it difficult for him to perform

such tasks.  Zinselmeier has also recently begun to experience slight tremors of the

left hand and left foot.  Diagnostic testing has yielded inconclusive results.

Medication prescribed for the tremors is continually adjusted and provides only

slight, short-term relief.  Zinselmeier also has bilateral hip pain for which he

receives injection therapy, hypertension, and anxiety and depression for which he

takes medication.

Zinselmeier turned 55 on March 1, 2017.

During the administrative hearing on August 1, 2018, the ALJ remarked that

she would need to perform an RFC analysis if she were to restrict Zinselmeier to

light work, but that an amended alleged onset date of disability to age 55 "would

absolutely grid him out at light . . . [e]ven the full range[.]"  (Tr. 48-49.)  The ALJ

asked counsel if Zinselmeier would be interested in amending his alleged onset date

to age 55, and Zinselmeier agreed to do so.  The ALJ then remarked that during her

pre-hearing review of the record, she focused on Zinselmeier's ability to perform

light work but that if she could find enough support in the record to find Zinselmeier

restricted to sedentary work, she would move his disability onset to an earlier date.

(Tr. 49-50.)  "[O]ne way or another," the ALJ said, "you're going to have that as at

least the onset date of that."  (Tr. 50.)

In her written decision entered March 18, 2019, the ALJ found that

Zinselmeier had the RFC to perform a limited range of medium work, and she concluded that Zinselmeier was not disabled from his original onset date of December 30, 2015, through the date of the decision.  (Tr. 18-29.)

With respect to the medical records and other evidence of record, I adopt Zinselmeier's recitation of facts set forth in his Statement of Uncontroverted Material Facts (ECF 16) to the extent they are admitted by the Commissioner (ECF 17-1).  To the extent the Commissioner disputes whether the ALJ agreed that Zinselmeier would "grid out" or that Zinselmeier successfully amended his alleged onset date of disability, these disputes and other additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for DIB and SSI under the Social Security Act, Zinselmeier must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled

"only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968.  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions,

I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.  *McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

The ALJ found that Zinselmeier met the requirements of the Social Security Act through December 30, 2020 (Tr. 19), and that he had not engaged in substantial gainful activity since December 30, 2015.  (Tr. 20).  The ALJ found that Zinselmeier's degenerative disc disease and essential tremor were severe impairments, but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20-24.)[2]  The ALJ found that Zinselmeier had the RFC to perform medium work except that he must "never climb ropes, ladders, or scaffolds; no limitation on left upper extremity; can frequently grasp/handle, occasionally finger, and write with the right upper extremity; and must avoid all exposure to unprotected heights."  (Tr. 24.)

The ALJ determined that Zinselmeier could not perform his past relevant work as a health equipment servicer.  Considering Zinselmeier's RFC and his age, education, and work experience, the ALJ found that interrogatory answers given by

---

[2] The ALJ determined that Zinselmeier's claimed mental impairments, hypertension, obesity, and alcohol use were not severe.  Zinselmeier does not challenge this finding.

a VE supported a conclusion that Zinselmeier could perform medium work as it
exists in significant numbers in the national economy, and specifically, as a machine
feeder, stubber, and linen room attendant, as well as light work as a housekeeping
cleaner, automated spinning lathe operator, and courier.  The ALJ thus found that
Zinselmeier was not under a disability from December 30, 2015, through the date of
the decision.  (Tr. 26-28.)

C.    Duty to Fully and Fairly Develop the Record

> We begin our analysis of the ALJ's duty to develop the record
> with a brief overview of the importance of this duty.  Normally in
> Anglo-American legal practice, courts rely on the rigors of the
> adversarial process to reveal the true facts of a case.  However, social
> security hearings are non-adversarial.  Well-settled precedent confirms
> that the ALJ bears a responsibility to develop the record fairly and
> fully, independent of the claimant's burden to press his case.  The
> ALJ's duty to develop the record extends even to cases . . . where an
> attorney represented the claimant at the administrative hearing.  The
> ALJ possesses no interest in denying benefits and must act neutrally in
> developing the record.

*Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citations omitted).

"There is no bright line rule indicating when the Commissioner has or has not

adequately developed the record; rather, such an assessment is made on a case-by-

case basis."  *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citing *Battles,* 36

F.3d 43, 45 (8th Cir. 1994)).  Errors that occur at the administrative hearing can

constitute a basis to remand.  *See Lewis v. Barnhart*, 201 F. Supp. 2d 918, 939 (N.D.

Ind. 2002).

Zinselmeier avers that the ALJ's statements at the hearing misled him and his attorney and caused them to believe that the ALJ intended to find Zinselmeier disabled in accordance with the Social Security Medical-Vocational Guidelines (the grid) if he amended his onset date to his 55th birthday. Because of the ALJ's misleading statements, Zinselmeier claims he "stopped prosecuting this claim" because he thought he had won. (ECF 15 at p. 5.) Zinselmeier's counsel therefore did not respond to the VE's interrogatory answers, propound his own interrogatories to the VE, or file a post-hearing brief.

To the extent Zinselmeier contends that the ALJ's statements at the hearing constituted an oral decision of disability based on the amended onset date and a finding that he was limited to light work, I agree with the Commissioner that the ALJ's statements are insufficient by themselves to constitute an oral decision on the record. *See* 20 C.F.R. §§ 404.953(b), 416.1453(b). However, I agree with Zinselmeier that the statements effectively caused him and counsel to stop actively prosecuting Zinselmeier's claims and possibly lured Zinselmeier into waiving benefits prior to his 55th birthday. To the extent the Commissioner contends that Zinselmeier and his counsel misunderstood the ALJ's statements at the hearing and that the ALJ merely stated that she would need to review the entire record before issuing her decision, I disagree.

A review of the hearing transcript in its entirety shows that after Zinselmeier

testified to his limitations, the ALJ stated that Zinselmeier would "absolutely grid . .
. out" at age 55 with a limitation to light work and then suggested that Zinselmeier
amend his onset date to age 55 to achieve this result.  (Tr. 48-49.)  The ALJ also
said that benefits could be awarded before Zinselmeier's 55th birthday if she could
find that he was limited to sedentary work before that date.  She therefore said that,
because she had "basically looked at light" work during her initial review of the
record, she would examine the record more closely to see if she could find a
limitation to sedentary work.  (Tr. 50.)  In the context of the entire record, I
conclude that it was reasonable for Zinselmeier and his attorney to construe the
ALJ's statements as an expression of her intent to award benefits as of Zinselmeier's
55th birthday, at the very least.  These statements were misleading, contributed to
counsel's decision to forego examination of the VE and filing a post-hearing brief,
and led to an underdeveloped record.

However, Zinselmeier's counsel – both at the administrative level and on this
judicial review – are experienced attorneys in disability litigation and should be
familiar with the Social Security regulations.  I am therefore not persuaded that they
believe(d) that the ALJ made an oral decision of disability on the record at the
hearing, as the ALJ's statements alone do not satisfy the regulations' requirements
for such a favorable decision.  *See* 20 C.F.R. §§ 404.953(b), 416.1453(b) (oral
decision on record must be accompanied by exhibit entered into record that

documents key data, findings of fact, and narrative rationale for decision).
Accordingly, at the conclusion of the hearing and throughout the remainder of the
administrative process, counsel should have known that the question of whether the
Commissioner conclusively determined Zinselmeier to be disabled remained an
open one.  And because the burden of proving disability remained with Zinselmeier,
counsel's decision to forego additional prosecution of the claim after the hearing
rests on Zinselmeier's and his counsel's shoulders, not the ALJ's.  *See Leonard v.
Saul*, No. 2:18-cv-00079 JAR, 2019 WL 4575745, at *4 (E.D. Mo. Sept. 20, 2019).

So, while I agree that the record in this action is underdeveloped and that the
ALJ's statements at the hearing may be partially to blame, I cannot conclude that the
ALJ's conduct at the hearing alone caused this circumstance.  Accordingly, remand
is not warranted on Zinselmeier's claim that the ALJ's statements resulted in her
failure to fully and fairly develop the record.  However, as discussed below, the
matter will be remanded to the Commissioner because the ALJ's RFC determination
is not supported by substantial evidence on the record as a whole.  Upon remand,
Zinselmeier and the Commissioner will have the opportunity to fully develop the
record in the case.

D.     RFC Determination

Residual functional capacity is the most a claimant can do despite his physical
or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).

The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  *Goff*, 421 F.3d at 793; 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue,* 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)).  A claimant's RFC is a medical question, however, and some medical evidence must support the ALJ's RFC determination.  *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002); *Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer v. Apfel,* 245 F.3d 700, 703–04 (8th Cir. 2001).  *See also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand."  *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell,* 259 F.3d at 712).

Section 405(b)(1) of Title 42 provides that "[e]vidence may be received at any hearing before the Commissioner" and that the Commissioner shall render a decision "on the basis of evidence adduced at the hearing."  Here, other than

referencing the date on which the hearing was held, the ALJ's written decision is silent with regard to any testimony or evidence adduced or statements made at the August 2018 hearing.  Indeed, as stated by Zinselmeier's counsel here, it is as though the hearing never occurred.  The ALJ did not acknowledge in her written decision that Zinselmeier amended his alleged onset date of disability at the hearing; she instead continually referred to December 30, 2015, as the alleged onset date. The ALJ likewise did not acknowledge her on-the-record discussion with Zinselmeier and his counsel about the likelihood of Zinselmeier's eligibility for benefits on his 55th birthday.  And her written assessment of Zinselmeier's subjective statements of symptoms examines only the statements made in Zinselmeier's Function Report (*see* Tr. 24-25), which he completed in September 2016 – nearly two years before the August 2018 administrative hearing.  At the August 2018 hearing, Zinselmeier testified to being limited more than as described in the Report, including that he experienced adverse side effects from medications, relinquished household chores to his mother, and shopped only when his mother shops.  (*Compare* Tr. 225-35 *with* Tr. 42-48.)  But the ALJ does not address these statements, or any other hearing testimony, in her decision.  Because an ALJ must determine a claimant's abilities as they exist at the time of the hearing, she cannot rely on remote evidence to determine a claimant's abilities.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995).  Accordingly, I cannot say that the ALJ rendered her

decision on the basis of evidence adduced at the hearing.

The ALJ likewise improperly relied on remote medical evidence to support her RFC determination by according great weight to a January 2017 opinion rendered by a State-agency non-examining medical consultant and discounting other substantial medical evidence of record that supports and is consistent with Zinselmeier's claims.  *Cf. Dolph v. Barnhart*, 308 F.3d 876, 879 (8th Cir. 2002) (appropriate to give less weight to opinion of physician who did not examine claimant for impairment at issue and whose expertise did not coincide with condition).  Notably, the State-agency consultant rendered his opinion before Zinselmeier's amended onset date of disability and nineteen months before the administrative hearing.  As noted above, an ALJ must determine a claimant's abilities as they exist at the time of the hearing.  She cannot rely on remote evidence to determine a claimant's abilities.  *Frankl*, 47 F.3d at 939; *see also Morse v. Shalala*, 32 F.3d 1228, 1230-31 (8th Cir. 1994) (ALJ erred by relying on old medical report and gave no weight to subsequent supporting evidence).

Nor did the State-agency consultant have the benefit of Zinselmeier's medical records from 2017 and 2018 that showed that Zinselmeier continued to complain of and clinically exhibit debilitating tremors and, further, that he had developed bilateral hip pain for which injection therapy was unsuccessful.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (ALJ must consider "the extent to which a medical

source is familiar with the other information in [the claimant's] case record");

*McCoy v. Astrue,* 648 F.3d 605, 616 (8th Cir. 2011) (opinion of non-examining

medical consultant afforded less weight when consultant did not have access to

relevant medical records, including records made after date of assessment); *Mayo ex*

*rel. D.L. v. Astrue*, 4:11CV201 LMB, 2012 WL 996580 (E.D. Mo. Mar. 22, 2012)

(remanding, in part, because the only medical evidence supporting the ALJ's finding

was over a year old and submitted by disability consultants who did not have the

benefit of the majority of the records before them).

The ALJ also improperly considered the medical record *in toto* in this case as

demonstrated by her mischaracterization of the treatment notes and diagnoses

rendered by Zinselmeier's treating and examining physicians.  For instance, in

appearing to discredit Zinselmeier's claims of disabling symptoms, the ALJ stated

that Zinselmeier's hand tremor diagnosis was "evasive," given that his physicians

never gave a "definitive diagnosis despite multiple diagnostic tests" and "repeated

clinical signs" indicated "no impairment."  (Tr. 26.)  Contrary to the ALJ's findings,

however, the record shows that beginning in April 2016 and continuing into 2018,

Zinselmeier's treating and examining physicians repeatedly diagnosed him with

action and/or essential tremor and based these diagnoses on several clinical

examinations that showed, *inter alia*, impaired finger-to-nose test on the right

because of shaking, increased tremor with attempted use of the right hand for fine

- 16 -

manipulation, increased tremor with intentional movement of the right hand, difficulty picking up a coin from the floor, increased shaking tremors with right hand when attempting to tie a shoelace, high amplitude tremor on the right with flexion/extension and finger-to-nose testing, very shaky handwriting, course tremor of right arm, inability to write, inability to complete a spiral with right arm.  (*See*, *e.g.*, Tr. 566-67, 329, 338, 391-92, 601, 555, 433, 486, 483.)[3]  The discrepancy between the actual evidence of record and the ALJ's findings that there were no definitive diagnoses or clinical findings of impairment undermines the ALJ's ultimate conclusion of non-disability.  *See Baumgarten v. Chater*, 75 F.3d 366, 368-69 (8th Cir. 1996).

The ALJ also appeared to misapprehend observations made by examining physicians in June and July 2016 that Zinselmeier's tremor appeared to be an intention-type tremor.  (*See* Tr. 410, 331.)  In her written decision, the ALJ stated that the physicians found that "the tremor was intentional.  Perhaps, but the consultative psychologist did not indicate the presence of a somatoform element to

---

[3] "Essential tremor (ET) is a type of involuntary shaking movement.  It has no identified cause. . . . [I]maging studies (such as a CT scan of the head, brain MRI, and x-rays) are usually normal." *Essential Tremor*, MedlinePlus, https://medlineplus.gov/ency/article/000762.htm (last visited July 28, 2021).  A physician's diagnosis of essential tremor is made by performing a physical exam and asking a patient about his medical and personal history.  *Id.*  Essential tremor is "the most common form of action tremor," which is "any tremor that is produced by voluntary contraction of muscles . . . . As there are no validated serological, radiological, and pathological markers in ET, the diagnosis is primarily based on clinical findings."  Dr. R. Bhidayasiri, Dep't of Neurology, UCLA Med. Ctr., *Differential Diagnosis of Common Tremor Syndromes*, Postgraduate Medical Journal, BMJ Journals (vol. 81, issue 962) (2005), *located at* https://pmj.bmj.com/ content/81/962/756 (last visited July 28, 2021).

the tremor."  (Tr. 26.)  An intention-type tremor, however, is defined as "a rhythmic, oscillatory, and high amplitude tremor during a directed and purposeful motor movement, worsening before reaching the target."  Franklyn Rocha Cabrero, Orlando De Jesus, *Intention Tremor*, MedlinePlus, https://www.ncbi.nlm.nih.gov/ books/NBK560642/ (last updated July 12, 2021).  "It is due to cerebellar dysfunction."  *Id.*  With her assumption that an "intentional" tremor must be rooted in a psychological condition, the ALJ appeared to improperly "play doctor" by drawing her own inferences from the medical records and making her own independent medical findings.  This is improper.  *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009 ); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996).

The ALJ found that Zinselmeier had the RFC to perform medium work with frequent grasping/handling and occasional fingering and writing with the right upper extremity.  As set out above, however, this RFC assessment was based on an incomplete review of the record, erroneous factual findings, and misapprehension of the medical evidence.  Moreover, other than improperly relying on the remote opinion of a non-examining consultant, the ALJ did not refer to any medical evidence of record to support her findings regarding Zinselmeier's ability to manipulate his right arm and hand.  Indeed, the ALJ engaged in no discussion or analysis of any evidence as it relates to Zinselmeier's RFC, that is, what he is able to

do despite his impairments.  An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record.  S.S.R. 96-8p, 1996 WL 374184, at *7.  The ALJ did not undergo this process here.  In the absence of any thoughtful discussion or analysis by the ALJ, I would be required to weigh the evidence in the first instance or review the factual record *de novo* in order to find the ALJ's RFC assessment to be supported by substantial evidence on the record as a whole.  This I cannot do.  *See Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

It is not clear as to what medical evidence, if any, the ALJ relied on to conclude that Zinselmeier could perform medium work with frequent grasping/handling and occasional fingering and writing with the right upper extremity.  Because the ALJ's decision is unclear as to the medical basis for her assessment of the degree to which Zinselmeier's impairments affect her RFC, I must remand the matter to the Commissioner for further proceedings.  *Lauer*, 245 F.3d at 704-05.

E.      Reassignment to Another ALJ

Zinselmeier requests that I order the matter to be assigned to a different ALJ upon remand.  I am aware of no authority that permits me to do this, and Zinselmeier cites to none.  The regulations commit the assignment of an ALJ to the

Commissioner and provide for the Deputy Commissioner to reassign a case to an ALJ other than the one originally assigned "[i]f circumstances warrant." 20 C.F.R. §§ 404.929, 416.1429. The regulations also provide for an administrative process by which claimants may request a different ALJ because of prejudice or partiality. *See* 20 C.F.R. §§ 404.940, 416.1440. Given these available administrative processes, I will not order a reassignment.

### Conclusion

Upon remand, the Commissioner shall obtain and provide the parties an opportunity to submit additional medical evidence that addresses Zinselmeier's ability to function in the workplace, which may include contacting Zinselmeier's treating health care providers to clarify his limitations and restrictions in order to ascertain what level of work, if any, he is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006). The Commissioner is also permitted to order additional examinations and tests in order for her to make an informed decision regarding the extent to which Zinselmeier's impairments, both severe and non-severe, affect his ability to perform work-related activities. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); 20 C.F.R. §§ 404.1517, 416.907. Upon receipt of any additional evidence, the Commissioner shall reconsider the record as a whole, reevaluate the credibility of Zinselmeier's own description of his symptoms and limitations, and reassess

- 20 -

Zinselmeier's RFC – including the extent to which his RFC is affected by medication side effects.  *See Owen v. Astrue*, 551 F.3d 792, 802 (8th Cir. 2008). Such reassessed RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion and description of how the evidence supports each RFC conclusion.  *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007).

Accordingly,

 **IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 16th day of August, 2021.